JOURNAL ENTRY AND OPINION
{¶ 1} Salvatore J. Spagnola appeals the trial court's decision granting summary judgment in favor of Minolta Industries, Inc. He also asserts this appeal on the basis that the trial court abused its discretion. After a thorough review of the arguments and for the reasons set forth below, we affirm.
 {¶ 2} The present action arose out of a business transaction between Salvatore J. Spagnola (defendant and third party plaintiff-appellant; herein "appellant") and Minolta Industries, Inc. (third party defendant-appellee; herein "appellee"). The appellant was the President and CEO of Ohio Business Machines, Inc. ("OBM") and was in the process of filing bankruptcy on behalf of OBM when he entered into negotiations with the appellee. On June 17, 2002, the appellant filed for bankruptcy in the United States Bankruptcy Court on behalf of OBM.
 {¶ 3} Three days prior, on June 14, 2002, the appellant and his mother, Betty Spagnola, entered into the first of two asset purchase agreements with the appellee, wherein the parties agreed that the appellee would purchase OBM's assets and would release Spagnola from his business debt with creditor Provident Bank. On June 21, 2002, the appellant, the appellee and Provident Bank entered into a second asset purchase agreement, wherein the appellee agreed to purchase OBM's assets and to assume liability for Spagnola's debt to Provident Bank in an amount not to exceed 5.7 million dollars. On that same date, the appellant entered into a reaffirmation of a continuing unconditional guarantee agreement with Provident Bank, in effect reaffirming his prior debt as well as any future payments by Provident to OBM.
 {¶ 4} On October 15, 2002, the appellant filed a debtor motion for authority to sell assets free and clear of liens, encumbrances and other interests, as well as a motion for approval of the transactions described in the June 21, 2002 asset purchase agreement. The appellant's motion was granted on October 31, 2002 and, shortly thereafter, the June 21, 2002 asset purchase agreement closed. At closing, the appellee purchased assets pursuant to the agreement and tendered more than 5.7 million dollars to Provident Bank to pay off the debt on behalf of the appellant.
 {¶ 5} On December 9, 2003, Provident Bank made an additional loan of $155,584.10 to the appellant and thereafter demanded repayment of the loan pursuant to the previous Provident guarantee agreement. Two months following the loan, Provident Bank filed suit[1] against the appellant seeking repayment of the loan. In response, the appellant denied all of the allegations contained in Provident's complaint and filed a third party complaint against the appellee alleging that the appellee had breached its obligations under the June 14, 2002 agreement. The appellant argued that, pursuant to the June 14th agreement, the appellee failed to obtain his release from the Provident guarantee. The appellee responded by filing an answer and counterclaim alleging that its assumption of OBM's obligations was capped at 5.7 million dollars pursuant to the June 21st asset purchase agreement. The appellee asserted that when it purchased OBM's assets, it transferred more than 5.7 million dollars to Provident Bank, fully complying with the terms of the June 21st asset purchase agreement and satisfying all of its obligations to the appellant.
 {¶ 6} In response to each other's claims, the appellant and appellee filed cross motions for summary judgment. On February 7, 2005, the trial court issued an order granting the appellee's motion for summary judgment and, in turn, denying the appellant's motion. The appellant now brings this appeal asserting three assignments of error for our review.
 {¶ 7} "I. The trial court erred when it granted summary judgment in favor of Minolta and denied Spagnola's summary judgment motion."
 {¶ 8} The appellant argues that the trial court erred when it denied his motion for summary judgment and instead granted summary judgment in favor of the appellee. More specifically, he asserts that the appellee breached the June 14, 2002 agreement when it failed to obtain Provident Bank's full release of all of his personal guarantees. The appellant argues that the June 14th agreement contained dispositive language requiring the appellee to fully release him from his obligations to Provident Bank. He further argues that, in light of the appellee's breach, he is entitled to damages and summary judgment with respect to liability.
 {¶ 9} "Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327, 364 N.E.2d 267.
 {¶ 10} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987),477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed. 2d 265; Mitseff v.Wheeler (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. Doubts must be resolved in favor of the nonmoving party. Murphy v.Reynoldsburg (1992), 65 Ohio St.3d 356, 604 N.E.2d 138.
 {¶ 11} In Dresher v. Burt, 75 Ohio St.3d 280,1996-Ohio-107, 662 N.E.2d 264, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied inWing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108,570 N.E.2d 1095. Under Dresher, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of therecord which demonstrate the absence of a genuine issue of factor material element of the nonmoving party's claim." Id. at 296. (Emphasis in original.) The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 12} Although the appellant argues that genuine issues of material fact exist with respect to liability, we cannot agree with his contentions. He asserts that the June 14th agreement controls, entitling him to summary judgment; however, it is clear that the subsequent June 21st agreement between the parties is the controlling agreement. Pursuant to the parole evidence rule of contract law, absent fraud or mistake, the parties' final written agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral or written agreements. Galmish v. Cicchini (2000), 90 Ohio St. 3d 22, 27,734 N.E. 782.
 {¶ 13} The June 21st agreement specifically addressed the appellee's obligation for the appellant's debt to Provident Bank when it stated:
 {¶ 14} "(b) Assumption of Liabilities and OtherObligations. On the Closing Date, Minolta shall assume, subject to an order of the U.S. Bankruptcy Court and the provisions of Section 365 of the U.S. Bankruptcy Code, only the following liabilities of OBM * * *:
 {¶ 15} "* * *
 {¶ 16} "(iii) the obligations of OBM and Spagnola to Provident pursuant to the Provident Loan Documents, only to the extent that the balance due under the Provident Loan Documents, inclusive of all principal, interest, costs, fees and other expenses, however expressed and whenever incurred, does not exceed $5.7 million * * *;"
 {¶ 17} The language of the June 14th agreement directly contradicts that of the June 21st agreement by stating:
 {¶ 18} "4. Releases of Certain Other Obligations. If the section 353 sale is consummated, then Minolta will cause Provident to unconditionally and completely release: (a) Spagnola from all obligations under the Provident Guarantee and any and all other obligations arising under the Provident Loan Documents; (b) except as provided in section 11(b) below, Betty Spagnola from all obligations under the Provident Pledge, including but not limited to its security interest in her bonds, and any and all other obligations arising under the Provident Loan Documents; and (c) Spagnola from all obligations under certain accounts receivable he owes to PGI and/or OBM in an amount not to exceed $280,000. The form of the release of such obligations shall be reasonably satisfactory in form and substance to Spagnola and his counsel."
 {¶ 19} It is clear from a review of the June 14th and June 21st agreements that the provisions contradict each other; therefore, pursuant to the parol evidence rule, where a provision in an earlier written agreement contradicts or varies from a provision in a later agreement, the later agreement controls. The parole evidence rule is not designed to destroy all earlier agreements tangentially related to a present contract, but rather it nullifies prior agreements as they relate to the specific terms included in the last writing.
 {¶ 20} In the present case, the June 21st agreement was the last agreement entered into between the parties, and it contains a provision concerning the release of the appellant's obligations to Provident Bank. Because the June 21st
agreement contains a provision discussing the exact subject matter as the June 14th agreement, which provision is in conflict with the June 14th agreement with respect to that subject matter, the June 21st agreement controls. The appellant was fully aware of the adjusted terms of the June 21st agreement and accepted the new terms when he signed the agreement. Accordingly, the terms of the June 21st agreement are valid and enforceable, whereas the terms of the June 14th agreement are not. Pursuant to the June 21st agreement, the appellee paid Provident Bank 5.7 million dollars on behalf of the appellants, fulfilling its financial obligation. Thus, no genuine issue of material fact remains to litigate. Accordingly, the trial court was not in error when it granted summary judgment in favor of the appellee, and the appellant's first assignment of error is without merit.
 {¶ 21} "II. The trial court abused its discretion when it required Spagnola to submit a proposed outline of questions for the deposition of Minolta's former counsel and Vice President Hans."
 {¶ 22} "III. The trial court abused its discretion when it granted Minolta's motion for protective order."
 {¶ 23} Because assignments of error two and three are substantially interrelated, we will address them jointly. Here the appellant argues that the trial court abused its discretion when it issued a discovery order requiring him to submit a proposed outline of deposition questions in order to depose the appellee's former counsel and Vice President Allen Hans. He asserts that the trial court's request that he reveal his questions prior to deposition violated the work-product doctrine. He further argues that the trial court abused its discretion when it granted the appellee's motion for a protective order, barring the deposition of Allen Hans on the basis that the appellant's proposed deposition questions did not fit within the requirements of the trial court's previous discovery order.
 {¶ 24} To constitute an abuse of discretion, the ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 50 OBR 481, 450 N.E.2d 1140.
 {¶ 25} "The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations." State v. Jenkins (1984),15 Ohio St.3d 164, 222, quoting Spalding v. Spalding (1959),355 Mich. 382, 3843-85. In order to have an abuse of that choice, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Id.
 {¶ 26} The appellant contends that Civ.R. 26(C) and 30(D) do not permit a court to limit an oral deposition by a preapproved outline of deposition questions; however, we do not agree.
 {¶ 27} Civ.R. 26(C) states in pertinent part:
 {¶ 28} "Protective orders:
 {¶ 29} "Upon motion by any party by the person whom discovery is sought, and for good cause shown, the court in which the action is pending may make any order that justice requires to protect a party or person form annoyance, embarrassment, oppression or undue burden or expense, including one or more of the following:
(1) That the discovery not be had;
(2) That the discovery may be had only on specified terms and conditions, including a designation of the time or place;
(3) That the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;
(4) That certain matters not be inquired into, or that the scope of discovery be limited to certain matters;
(5) That discovery be conducted with no one present except persons designated by the court;
(6) That a deposition after being sealed be opened only by order of the court;
(7) That a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way;
(8) That the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court."
 {¶ 30} It is clear from the language of Civ.R. 26(C) that the trial court did not abuse its discretion when it ordered the appellant to submit an outline of deposition questions limited to narrow and specific issues. Subsection (4) of Civ.R. 26(C) specifically provides that the trial court may order that certain matters not be inquired into, or that the scope of discovery be limited to certain matters. The trial court's order that the appellant submit an outline of deposition questions was a clear exercise of that power. Pursuant to Civ.R. 26(C), the trial court is given the power to "make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." It is apparent that the trial court's request was well within the parameters of Civ.R. 26(C), thus, it did not constitute an abuse of discretion.
 {¶ 31} The trial court was also in conformity with Civ.R. 30(D) when it granted the appellee's motion for a protective order on the basis that the appellant's outlined deposition questions did not comport with its discovery order.
 {¶ 32} Civ.R. 30 (D) states in pertinent part:
 {¶ 33} "Motion to terminate or limit examinations:
 {¶ 34} "At any time during the taking of the deposition, on motion of any party or of the deponent and upon a showing that the examination is being conducted in bad faith or in such a manner as unreasonably to annoy, embarrass, or oppress the deponent or party, the court in which the action is pending may order the officer conducting the examination to cease forthwith from taking the deposition, or may limit the scope and manner of the taking of the deposition as provided in Civ.R. 26(C). If the order made terminates the examination, it shall be resumed thereafter only upon the order of the court in which the action is pending. Upon demand of the objecting party or deponent, the taking of the deposition shall be suspended for the time necessary to make a motion for an order. The provisions of Civ.R. 37 apply to the award of expenses incurred in relation to the motion."
 {¶ 35} The language of Civ.R. 30(D) specifically provides that the trial court may grant a protective order when it feels that a party's actions are not in accordance with Civ.R. 26(C). When the trial court granted the appellee's motion for a protective order, it addressed the appellant's outline of proposed deposition questions:
 {¶ 36} "The submitted outline is vague and over broad and includes topics that are within attorney-client privilege or protected. As the outline was not within the confines of this court's order of narrow and specific issues, the motion for protective order is granted."
 {¶ 37} Pursuant to Civ.R. 26(C), the trial court ordered that the appellant submit an outline of deposition questions limited to narrow and specific issues. When the court discovered that the appellant's outline was not in conformity with its order, pursuant to Civ.R. 26(C), it exercised its power under Civ.R. 30(D) and granted a protective order, barring the deposition.
 {¶ 38} The trial court did not abuse its discretion. The trial court's actions were in conformity with Civ.R. 26(C) and 30(D), and its orders pursuant to those rules were neither unreasonable, arbitrary, nor unconscionable. Accordingly, the appellant's second and third assignments of error are without merit, and we affirm the findings of the trial court.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, A.J., and Blackmon, J., concur.
[1] The complaint, titled The Provident Bank v. Salvatore J.Spagnola, was filed in case number CV-520695. The Notice of Appeal and all briefs filed in the appeal erroneously refer to the case number as "530695." The correct case number is CV-520695.