[Cite as *Olds v. Jones*, 2012-Ohio-4941.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 98169

# ROBIN JONES OLDS, ET AL.

### PLAINTIFFS-APPELLANTS

vs.

# JUDY JONES, ET AL.

### DEFENDANTS-APPELLEES

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Cuyahoga County Common Pleas Court
Probate Court Division
Case No. 11 ADV 0168187

**BEFORE:** E. Gallagher, J., Stewart, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** October 25, 2012

**ATTORNEY FOR APPELLANTS**

Jonathan F. Sobel
Kabat, Mielziner & Sobel
30195 Chagrin Blvd.
Suite 300
Pepper Pike, Ohio    44124


**ATTORNEYS FOR APPELLEE**

**For Judy Jones**

Richard A. Hennig
Janet L. Hennig
Baker, Hackenberg & Hennig Co.
77 North St. Clair Street
Suite 100
Painesville, Ohio    44077


**For Lake National Bank**

Gina M. Bevack-Ciani
Todd C. Hicks
Thrasher, Dinsmore & Dolan
100 7th Avenue
Suite 150
Chardon, Ohio    44024

EILEEN A. GALLAGHER, J.:

{¶1} Robin Jones Olds and Martha Skurla appeal the trial court's order granting summary judgment in favor of defendants-appellees, Judy Jones, executor of the estate of Martha O. Rand, and Lake National Bank. For the following reasons, we affirm.

{¶2} This case arises out of a dispute involving a Lake National Bank account opened by Martha Rand on February 28, 2005, that contained a pay-on-death designation.

{¶3} On May 5, 2011, appellants filed a complaint for declaratory judgment in the probate division of the Cuyahoga County Court of Common Pleas, naming appellees as defendants and seeking a declaration that appellants are the designated pay-on-death beneficiaries on the account as well as an order to enforce the distribution of the account to the appellants. Defendants-appellees answered the complaint and Judy Jones, as executor of Rand's estate, asserted a counterclaim for declaratory judgment seeking a declaration that the account is an asset of the estate of Rand and requesting an order that the account's funds be distributed pursuant to Rand's last will and testament.

{¶4} The trial court concluded in its ruling that the bank documents in evidence, specifically the account's signature card and a customer source maintenance form, unambiguously demonstrated that Rand had terminated the pay-on-death status of the

account and deleted all beneficiaries on July 28, 2010. The trial court ordered the account be treated as an asset of Rand's estate. The sole assignment of error asserted is:

The trial court erred in granting summary judgment to defendants.

{¶5} Our review of a trial court's grant of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Pursuant to Civ. R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), paragraph three of the syllabus; *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 696 N.E.2d 201 (1998). The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

{¶6} Appellants argue that the trial court erred in concluding that the contract between Rand and Lake National Bank was not ambiguous. They assert that the account's signature card represents the entire contract between Rand and the bank and that the trial court erred in treating the bank's customer source maintenance form as part of the contract as opposed to parol evidence and that the instructions on the signature

card regarding the status of the account as pay-on-death and the existing beneficiaries are ambiguous. They then sought to introduce parol evidence in the form of the deposition testimony of appellant Martha Skurla and an affidavit of Patricia Capello to explain the intentions of Rand and give meaning to the purportedly ambiguous beneficiary terms.

> Generally, courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement. Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions. When the terms in a contract are unambiguous, courts will not create a new contract by finding an intent not expressed in the clear language employed by the parties.

*Shifrin v. Forest City Ents.*, 64 Ohio St.3d 635, 638, 1992-Ohio-28, 597 N.E.2d 499.

{¶7} The determination of whether a contract is ambiguous and, therefore, requires extrinsic evidence is a matter of law. *Willard Constr. Co. v. Olmsted Falls*, 8th Dist. No. 81551, 2003-Ohio-3018, ¶ 18; *Lisboa v. Lisboa*, 8th Dist. No. 90105, 2008-Ohio-3129, ¶ 15. When the terms of a contract are unambiguous courts will not, in effect, create a new contract by finding an intent not expressed in the clear language employed by the parties. *Waina v. Abdallah*, 8th Dist. No. 86629, 2006-Ohio-2090, ¶ 31, citing *Shifrin v. Forest City Ents.*, 64 Ohio St.3d 635, 1992-Ohio-28, 597 N.E.2d 499. If no ambiguity appears on the face of the contract, parol evidence cannot be considered in an effort to demonstrate such an ambiguity. *Id*. at ¶ 31. Common words appearing in a written contract will be given their ordinary meaning unless manifest absurdity results or some other meaning is clearly evidenced from the face or overall

contents of the instrument. *Id.* at ¶ 31.

{¶8} In regard to payable-on-death bank accounts, R.C. 2131.10 provides in relevant part as follows:

> A natural person, adult or minor, referred to in sections 2131.10 and 2131.11 of the Revised Code as the owner, may enter into a written contract with any bank, * * * whereby the proceeds of the owner's * * * deposit * * * may be made payable on the death of the owner to another person or to any entity or organization, referred to in such sections as the beneficiary * * *. In creating such accounts, "payable on death" or "payable on the death of" may be abbreviated to "P.O.D."

> Every contract * * * authorized by this section shall be deemed to contain a right on the part of the owner during the owner's lifetime both to withdraw the proceeds * * * in whole or in part, as though no beneficiary has been named, and to designate a change in beneficiary. The interest of the beneficiary shall be deemed not to vest until the death of the owner.

> No change in the designation of the beneficiary shall be valid unless executed in the form and manner prescribed by the bank * * * .

{¶9} In the case sub judice, a careful review of Rand's account signature card reveals no ambiguities as to its final pay-on-death and beneficiary terms. An examination of the account's signature card reveals the following facts. Rand created the account on February 28, 2005. At its inception the account was marked as "pay-on-death" with two typewritten beneficiaries listed, Jerome T. Osborne and Judy Jones. A handwritten check mark appears in the margin outside the account box and closest to Osborne's name and "(BROTHER)" and "(NIECE)" are handwritten next to Obsorne and Jones, respectively. The signature card shows handwritten amendments dated July 23, 2010, and July 28, 2010.

{¶10} The two lines of changes dated July 23, 2010, are written beside the existing typewritten beneficiaries and state: "ADD: MARTHA A. SKULA (NIECE)," followed directly beneath by "ROBIN J. OLDS (NIECE)." Rand's signature and the date, July 23, 2010, appear directly beneath the two added beneficiaries.

{¶11} Above the July 23, 2010 additions exist two lines of changes dated July 28, 2010. First, the checked "pay-on-death" box has "REMOVED 7/28/10" attached to it. Second, beneath the removed pay-on-death instruction and above the four listed beneficiaries, is an amendment stating, "DELETE BENEFICIARIES," also dated July 28, 2010, and signed by Rand.

{¶12} Appellants suggest that the instructions on the signature card are ambiguous because Rand's signature appears only once beneath the two July 28, 2010 changes: "REMOVED 7/28/10" and "DELETE BENEFICIARIES." Appellants seem to suggest that Rand should have entered a signature for both lines dated July 28, 2010. However, the single signature for the July 28, 2010 changes is consistent with the single signature beneath the two July 23, 2010 additions of Martha Skurla and Robin J. Olds. Rand did not sign for each line of additions in that instance, either. We cannot say that a single signature for two consistent amendments both clearly dated and nearly next to one another generates any type of ambiguity that would somehow invalidate the instruction removing the pay-on-death status from the account.

{¶13} Similarly, we find no merit in appellant's argument that the term "delete

beneficiaries" is ambiguous within the context of the entire signature card. Even if this court considered the term "delete beneficiaries," by itself, to be ambiguous, there remains no reasonable construction of the term "removed 7/28/10" attached to the pay-on-death designation consistent with the interpretation that *any* beneficiaries remained after the July 28, 2010 changes. In fact, the use of the term "delete beneficiaries" implies that all beneficiaries were deleted and is completely consistent with the simultaneous removal of the pay-on-death designation.

{¶14} Considering these facts, we cannot conclude that the signature card is ambiguous. To construe the language in any other manner would require this court to ignore the clear written language of the contract. The instruction removing the pay-on-death designation of the account, by itself, implicitly deletes any existing beneficiaries. The further addition of the term "delete beneficiaries" is merely a belt and suspenders approach that clarifies the intent of the July 28, 2010 changes as opposed to confusing it as appellants argue. Appellant's argument that the intent of Rand must be gleaned not from the plain written terms of the signature card but from the testimony of Skurla and Capello is an attempt to generate an ambiguity by way of parol evidence where no such ambiguity exists.[1]

---

[1] The fact that Lake National Bank employees examined the signature card with less than the requisite level of care and initially incorrectly informed the appellants that they remained as beneficiaries does not render the clear terms of the signature card ambiguous. The amendments are such that one cannot simply glance at the card and instantaneously report its final status. However carefully examining the amendments in their stated chronological order leads to the

{¶15} Appellants argue that the deposition testimony of Skurla and affidavit of Capello should not be treated as parol evidence due to the fact that the two witnesses' recounted conversations with Rand that occurred *subsequent to* Rand's final amendment of the account contract with Lake National Bank on July 28, 2010.

{¶16} Pursuant to the parol evidence rule of contract law, absent fraud or mistake, the parties' final written agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral or written agreements. *Provident Bank v. Spagnola*, 8th Dist. No. 86348, 2006-Ohio-566, ¶ 12, citing *Galmish v. Cicchini*, 90 Ohio St.3d 22, 27, 2000-Ohio-7, 734 N.E.2d 782. Appellants' argument appears to implicate the exception to the parol evidence rule for subsequent oral modifications of a written agreement. As referenced by the appellants, the parol evidence rule "has no application to evidence regarding a subsequent oral modification of a written agreement * * *." *SDR & R, Inc. v. JMS Constr. Co.*, 8th Dist. No. 57975, 1991 Ohio App. LEXIS 360 (Jan. 31, 1991). However, the deposition testimony of Skurla and affidavit of Capello do not concern an oral modification of Rand's agreement with Lake National Bank. Rand modified, in writing, her contract with the bank on July 23 and July 28, 2010. The testimony of Skurla and Capello concern characterizations of what Rand represented to them to be the modifications she had made when neither Skurla or Capello were present with Rand at the bank. The testimony of

inescapable conclusion that after the final amendments the account's pay-on-death

Skurla and Capello is not evidence of a subsequent oral modification of the written agreement. Rand did not modify her agreement with the bank in her discussions with Skurla and Capello. Instead, Rand last modified her agreement in writing at the bank on July 28, 2010, and any subsequent representations of those modifications that may have been made to Skurla and Capello were characterizations of what had occurred that day at the bank. Any characterizations by Rand of what occurred contemporaneously to her written modifications to the account contract are barred by the parol evidence rule and do not fall within the exception for oral modifications.

{¶17} Finally, we note that the dispute among the parties as to whether or not the customer source maintenance form should be treated as part of the contract or parol evidence is a moot point. The form is consistent with the July 28, 2010 amendments to the signature card removing the pay-on-death status of the account that deleted the beneficiaries. Whether the form is parol evidence or part of the contract is irrelevant as the signature card is unambiguous. While the customer source form is consistent with the signature card, any reference to the customer source form for an explanation of the clear terms of the signature card is unnecessary. In fact, the form adds absolutely nothing to the present dispute as it merely restates the exact same amended terms from July 28, 2010, found on the signature card using the same language. Whether or not the form is properly categorized as parol evidence has no bearing on the outcome of the dispute.

designation and beneficiaries were removed.

**{¶18}** Appellant's sole assignment of error is overruled.

**{¶19}** The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, JUDGE

MELODY J. STEWART, P.J., and
SEAN C. GALLAGHER, J., CONCUR